IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:04-CR-0069 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| TRINA SMITH | : | |

### MEMORANDUM

Presently before the court is defendant's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.[1]  Defendant asserts that she received ineffective assistance of counsel in violation of her Sixth Amendment rights under the United States Constitution.  (Doc. 81 at 1.)  Specifically, defendant claims that the court erred in calculating her Sentencing Guidelines range and that her counsel provided ineffective assistance by failing to object to alleged sentencing range errors.  (Id. at 1-2.)  For the reasons that follow, the court will deny defendant's motion.

I.   **Factual Background**

On September 23, 2004, defendant pled guilty to a superseding information that charged her with one count of unlawful distribution and possession with the intent to distribute cocaine base.[2]  (See Docs. 38, 39, 42.)  The information stated that defendant committed the offense conduct between September 1, 2003 and

---

[1] See 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

[2] See 21 U.S.C. § 841(a)(1).

February 20, 2004.  (See Doc. 38.)  The presentence report stated that defendant possessed between 150 and 500 grams of cocaine base, resulting in a base offense level of 34.  Defense counsel objected to the report's conclusion, and at sentencing the court found that defendant possessed 56.7 grams of cocaine base.  (See Doc. 66 at 2-4.)  This reduction produced a base offense level of 32.  See U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(4) (2004).  The court otherwise adopted the findings of the presentence report, which included an additional three-level reduction for defendant's acceptance of responsibility.  See id. § 3E1.1(a), (b); (Doc. 66 at 4, 6.)  The court also granted the government's motion (Doc. 48) for a five-level downward departure on the basis of substantial assistance pursuant to Sentencing Guidelines § 5K1.1.  (See Doc. 66 at 11-12.)  These additional reductions resulted in an offense level of 24.  (Id. at 8, 12.)

The court also found that defendant had been convicted of prior drug offenses in 1988 and 1993, rendering her a career offender and producing a criminal history category of VI.  (Id. at 6, 8, 12.)  The resulting sentencing range was 100 to 125 months' imprisonment, and the court imposed a sentence of 110 months.  (Id. at 8, 20).[3]  Defendant now objects to the court's reliance on her 1988 conviction when assigning her career offender status.

---

[3]Defendant appealed her sentence, which was affirmed by the United States Court of Appeals for the Third Circuit without prejudice to defendant's right to raise an ineffective assistance of counsel claim in a habeas corpus proceeding. United States v. Smith, 237 F. App'x. 732, 733 (3d Cir. 2007) (concluding sentence imposed was "clearly a reasonable one").

**II.     Discussion**

Defendant claims that her attorney's performance during the sentencing hearing deprived her of her Sixth Amendment right to counsel.  (Doc. 81.)  She asserts that counsel provided ineffective assistance by failing to object to the allegedly erroneous reliance on her 1988 conviction when evaluating her career offender status.

To demonstrate ineffective assistance of counsel, defendant must show that counsel's performance "fell below an objective standard of reasonableness" as measured by "prevailing professional norms."  Strickland v. Washington, 466 U.S. 668, 688 (1984).  The court's review of counsel's performance must be highly deferential, and the mere existence of errors or mistakes is not alone sufficient to prove constitutionally ineffective assistance of counsel.  Id. at 689, 691.  Second, defendant must establish that she suffered prejudice as a result of this deficient performance.  Id. at 692.  Defendant must prove that counsel's performance influenced the outcome, demonstrated by a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  Therefore, in order to determine whether counsel's failure to object rises to the level of constitutional ineffectiveness, the court must consider whether calculation of defendant's sentencing range warranted objection.

A defendant qualifies as a career offender if the defendant was at least eighteen years old at the time the defendant committed the instant offense, the instant offense is a controlled substance felony, and the defendant has at least two

prior felony convictions for either a crime of violence or a controlled substance offense. U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a) (2004). "Any prior sentence of imprisonment exceeding [thirteen months] that was imposed within fifteen years of the . . . instant offense is counted" for purposes of this calculation. See id. § 4A1.2(e)(1); id. § 4B1.2 cmt 3 (stating that the provisions of § 4A1.2 apply when calculating career offender status). The length of a sentence is evaluated based on the maximum sentence imposed. Id. § 4A1.2(b)(1). A qualifying sentence imposed outside of the fifteen-year window is also counted if it resulted "in the defendant being incarcerated during any part of such fifteen-year period." See id. § 4A1.2(e)(1).

In the instant matter, the court relied on defendant's 1988 and 1993 drug convictions when adjudicating her career offender status. Defendant alleges that the court improperly relied on her 1988 conviction in performing this analysis. That sentence, imposed on July 11, 1988 after defendant pled guilty to possession with the intent to manufacture or deliver cocaine, imposed a maximum of twenty-three months' imprisonment, exceeding the thirteen-month threshold for consideration

toward career offender status.  (See Doc. 98 at 1, 11.)[4]  Hence, the court's consideration of the sentence was proper if either it was imposed or defendant was imprisoned during any portion of the fifteen-year window preceding her conduct associated with the instant offense.  See U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(e)(1) (2004).

The superseding information to which defendant pled guilty charges that she commenced the instant offense conduct on or about September 1, 2003.  (See Doc. 38.)  The fifteen-year window for purposes of her career offender status commenced fifteen years earlier, on September 1, 1988.  Defendant was sentenced for the 1988 conviction on July 11 of that year, placing imposition of the sentence outside of the fifteen-year window.  (See Doc. 98 at 11.)  Hence, the career offender inquiry turns upon whether defendant was imprisoned for the offense on September 1, 1988, when the fifteen-year window commenced.

Defendant's term of imprisonment began on July 15, 1988.  (Id. at 1, 11)  Defendant served two months' confinement and was then placed on furlough

---

[4] On April 11, 2008, the court instructed the government to file documents reflecting the duration of defendant's incarceration following the 1988 conviction. (See Doc. 92.)  By letter dated May 30, 2008 and copied to defendant, the government provided docket reports reflecting defendant's criminal proceedings. The court also obtained a Certificate of Imposition of Judgment issued by the Delaware County Court of Common Pleas from the United States Probation and Pretrial Services System.  Both items were placed on the docket in the above-captioned matter, (see Doc. 98), and the court permitted defendant to respond to the document on or before June 19, 2008, (see Doc. 97).  As of the date of this memorandum, defendant had filed no such response.  The court therefore presumes that defendant does not contest the accuracy of the criminal docket and judgment.

status[5] commencing on approximately September 15, 1988.  (Id.)  While on furlough, she was released from confinement every Sunday at 6:00 p.m. and was required to return to prison at 6:00 p.m. each Friday.  (Id. at 1.)  She was also required to attend outpatient substance abuse treatment during the weekdays.[6]  (Id.)  She was

---

[5]At the time of Smith's 1988 convictions, an inmate on furlough status was permitted to leave the inmate's correctional institute for a periods of up to seven consecutive days for the purpose of "furthering an inmate's rehabilitative programs," 37 PA. CODE § 94.2(b) (1984), or "reintegration into the community," id. § 94.2 (c)(3).  Similar programs exist under present versions of prison regulations.  See 37 PA. CODE § 94.2 (2008).

[6]A letter submitted by the government also describes a drug offense that defendant committed during June 1988, several months after she committed the conduct that ultimately resulted in the 1988 conviction.  (See Doc. 98 at 2.)  This second offense did not appear in the presentence report.  The dockets submitted by the government indicate that defendant was incarcerated for this second offense from June 10, 1988 to March 4, 1989.  (Id. at 6-8.)  The government's letter than provides two alternative interpretations of the interrelationship between the 1988 conviction and the second offense:

therefore incarcerated within the fifteen-year window relevant for career offender status.

---

> Smith pled guilty on June 15, 1988 [to the offense upon which her career offender status is based. At that] time she was ordered to participate in out patient drug treatment and after 2 months she was to be placed on furlough status. While this would take her confinement into September of 1988, it cannot be determined if she was in prison during this time and furloughed from prison in September of 1988. . . . [S]ince the sentence indicates she was to participate in out patient drug treatment, it is hard to imagine how she could do that if she was in the Delaware County Prison. Another interpretation of the docket entries is that she was sentenced to 23 months probation and incarcerated for 2 months. After 2 months she was furloughed with a condition of her being released that she participate in out-patient drug treatment. The most likely scenario is that she was out on bail on the drug offense at issue in the pre-sentence report but arrested on the other drug offense on June 10, 1988. She was in jail on the detainer [associated with the latter offense] until March of 1989 while [the case upon which her career offender status is based] was disposed of by a guilty plea on June 15, 2008 and the imposition of a sentence on July 11, 1988. . . .

(Id. at 3.) The government's letter does not discuss the Certificate of Imposition of Judgment, and it does not appear that the government had reviewed this document at the time of the letter's writing. However, much of the ambiguity described in the government's letter dissolves upon review of the Certificate. The Certificate states that defendant was sentenced to between eight and twenty-three months' imprisonment as a result of her 1988 conviction. (Id. at 1.) It details that "[a]fter 2 mos. of total confinement, deft. to be placed on furlough status from Sun. 6 p.m. to Fri. 6.p.m. As soon as placed on furlough status, deft. is to continue out-patient drug treatment and follow any treatment so long as deemed necessary." (Id.)

In light of this information, the court concludes the sentence for the 1988 conviction (used to calculate defendant's career offender status) required her to serve two months' imprisonment, after which she was placed on furlough status, allowing her to leave prison between Sunday and Friday. During these release periods she was required to participate in outpatient drug treatment programs.

It appears likely that her second offense interfered with her release on furlough and that at the end of the two-month period described by the Certificate she remained in confinement pending disposition of the other charges. Under any scenario, however, she was imprisoned between September 1 and September 15, 1988 for the conviction upon which her career offender status is based. This places the conviction within the fifteen-year window for purposes of her career offender status, which the court properly calculated under the Sentencing Guidelines.

7

Accordingly, the court properly relied upon defendant's 1988 conviction to conclude that she qualified as a career offender.[7] Defendant may not predicate a claim of ineffective assistance upon counsel's failure to object to a proper calculation of defendant's Sentencing Guidelines range.

### III. Conclusion

For the foregoing reasons, defendant's motion (Doc. 80) will be denied.

An appropriate order will issue.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     June 25, 2008

---

[7]Defendant also claims that the court erroneously relied on three of her prior convictions for failure to file earned income taxes when evaluating her career offender status because there were "no court proceedings" associated with these offenses. (Doc. 81 at 3, 6.) The presentence report, however, indicates that these charges were assigned docket numbers and resulted in convictions and fines. Defendant has provided no evidence to the contrary. In any event, these offenses were assigned no criminal history points and therefore have no bearing on defendant's career offender status. See U.S. SENTENCING GUIDELINES MANUAL § 4B1.1 (2004) (counting only prior felony convictions for crimes of violence or controlled substance offenses).

Defendant finally claims that she was entitled to a two-level reduction for her mitigating role in the offense pursuant to Sentencing Guidelines § 3B1.2(b). (Doc. 81 at 3 (including a "role adjustment" in defendant's sentencing range calculation.)) The record, however, is completely devoid of any evidence demonstrating that defendant, as the sole participant in the charged conduct, qualified for this reduction. See (Doc. 38); U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 cmt. 2 (2004) (stating that reductions for a defendant's mitigating or minor role in an offense are inapplicable unless multiple individuals participated in the charged conduct).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:04-CR-0069** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **TRINA SMITH** | : | |

## ORDER

AND NOW, this 25th day of June, 2008, upon consideration of the motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 80), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 80) is DENIED.

2. A certificate of appealability is DENIED.  See 28 U.S.C. § 2253(c)(1)(B).

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge